IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

AMBERLY C. HENDERSON,           )
                                )
              Plaintiff,         )
                                )
                                )      CIV-08-932-HE
v.                              )
                                )
MICHAEL J. ASTRUE,              )
   Commissioner of Social Security )
    Administration,             )
                                )
              Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382.  Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues.   The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following

reasons, it is recommended that the Commissioner's decision be reversed and remanded for

further administrative proceedings as more fully explained herein.

I. Background

Plaintiff filed her application for supplemental security income benefits on March 14,

2002 (protective filing date). (TR 64, 81K).  Plaintiff alleged that she was disabled beginning

1

on her date of birth, June 6, 1975, due to frequent headaches, a learning disability, back problems, obesity, emotional problems, possible high blood pressure, and depression. (TR 64, 81B).  Her work history indicates Plaintiff worked in a variety of jobs for 50 or more employers between 1993 and 2002. (TR 73-80). Plaintiff stated that she quit working in January 2002 because her "back hurt" and she was unable to "stand for very long." (TR 81B).  Plaintiff described an 11th grade education in which she was in special education classes. (TR 81H, 81T).  She described various daily activities, including caring for her child, cooking meals, performing household maintenance chores, taking care of her personal needs, watching television, doing word search puzzles, visiting friends and relatives, grocery shopping, and driving. (TR 81O-81S).

Plaintiff's application was denied at the initial and reconsideration levels of administrative review. (TR 31, 32). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge O'Bryan on October 8, 2003. (TR 257-290). At the hearing, Plaintiff and a vocational expert ("VE") testified.  Administrative Law Judge O'Bryan issued an adverse decision on October 29, 2003, in which the ALJ found that Plaintiff was able to perform her past relevant work and was therefore not disabled within the meaning of the Social Security Act. (TR 118-124).  The Appeals Council reversed this decision and remanded the case for additional proceedings.  In the order of remand, the Appeals Council identified numerous errors in the ALJ's evaluation of the evidence and inadequate development of the evidence with respect to relevant issues, particularly with respect to Plaintiff's past relevant work.  On remand, the Appeals Council directed, *inter*

*alia*, that the ALJ obtain supplemental evidence from a vocational expert to clarify Plaintiff's past relevant work and the effect of her assessed limitations on claimant's occupational base.

A supplemental hearing was conducted concerning Plaintiff's application before Administrative Law Judge Wampler ("ALJ") on August 15, 2006, at which Plaintiff and a medical expert, Dr. Bower, testified. (TR 291-310).   A second supplemental hearing was conducted before the ALJ on March 14, 2007, at which Plaintiff and a medical expert, Dr. Brady, testified. (TR 311-324).  The ALJ subsequently issued a decision dated May 24, 2007, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (TR 18-24).  The Appeals Council declined Plaintiff's request for review of the decision (TR 8-10).  Plaintiff now seeks judicial review of the final decision of the Commissioner, which is embodied in the ALJ's May 24, 2007 determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79

F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992).  However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight."  Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. § 416.920(b)-(f) (2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. ALJ's Decision

Following the established sequential evaluation procedure, the ALJ found at step one

4

that Plaintiff had not engaged in substantial gainful activity.  At step two, the ALJ found that Plaintiff had severe impairments due to back pain, tension headaches, obesity, and borderline to low average intellectual functioning. (TR 23).  The ALJ found at the third step that Plaintiff's severe impairments or a combination of those impairments were not disabling *per se* under the agency's Listing of Impairments. (TR 23).  At step four, the ALJ found that despite her severe impairments Plaintiff had the residual functional capacity ("RFC") to perform semi-skilled work at the medium exertional level that does not involve more than routine interactions with co-workers and/or the general public.  (TR 23).  Reaching the fifth and final step of the sequential evaluation, the ALJ found that Plaintiff "remains able to perform a very wide range of unskilled and semi-skilled work through out [sic] the sedentary, light, and medium exertional levels" and "using the Grid Rule 204.00 as a framework for decision making, ... the claimant is not disabled." (TR 22-23).

IV. Step Five - Application of the Grids

       Plaintiff contends that the ALJ erred by conclusively applying the agency's Medical-Vocational Guidelines, commonly known as the grids, at step five where the record was not sufficiently developed as to Plaintiff's nonexertional impairments or the record failed to support a finding that Plaintiff's nonexertional impairments were insignificant.   The Commissioner responds that no error occurred in the ALJ's evaluation of the evidence and that substantial evidence supports the Commissioner's decision.

       At step five, the burden shifts to the Commissioner to show that the claimant retains the RFC to do other work that exists in the national economy.  Thompson v. Sullivan, 987

F.2d 1482, 1487 (10th Cir. 1993).  In certain instances, the Commissioner satisfies this burden by relying on the grids.  "The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience." Id.  "Under the [Commissioner's] own regulations, however, the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." Frey v. Bowen, 816 F.2d 508, 512 (10th Cir. 1987)(internal quotation omitted).  "[S]ince nonexertional limitations are not factored into the grids but must be taken into account in determining a claimant's RFC, the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his [or her] ability to perform the full range of work in a particular RFC category on a sustained basis." Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988)(quotation omitted).

The ALJ stated in his decision that "[s]ince the claimant does possess significant nonexertional impairments, the Grid Rules can only be applied as a framework to determine whether there is other [sic] that the claimant can perform which exist in the economy in significant numbers." (TR 22).  The ALJ failed to develop any vocational testimony, in disregard of the Appeals Council's directive that on remand the ALJ

> will * * * [o]btain supplemental evidence from a vocational expert to clarify past relevant work and the effect of the assessed limitations on the claimant's occupational base .... The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy .... Further, before relying on the vocational expert evidence the [ALJ] will identify and resolve any conflicts

> between the occupational evidence provided by the vocational
> expert and information in the [DOT] and its companion
> publication, the Selected Characteristics of Occupations ....

(TR 135).  Because the ALJ did not obtain vocational testimony, the ALJ applied the grids

conclusively to "direct" a finding of "not disabled." See Ramirez v. Astrue, 255 Fed. Appx.

327, 329 n. 1, 2007 WL 4124475, *3 (10th Cir. Nov. 20, 2007)(unpublished op.).  "The grids

should not be applied conclusively in a particular case ... unless the claimant could perform

the full range of work required of that [RFC] category on a daily basis and unless the

claimant possesses the physical capacities to perform most of the jobs in that range." Hargis

v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991).  "Moreover, resort to the grids is

particularly inappropriate when evaluating nonexertional impairments such as pain and

mental impairments." Id.  "In summary, an ALJ may not rely conclusively on the grids unless

he [or she] finds (1) that the claimant has no significant nonexertional impairment, (2) that

the claimant can do the full range of work at some RFC level on a daily basis, and (3) that

the claimant can perform most of the jobs in that RFC level.  Each of these findings must be

supported by substantial evidence." Thompson, 987 F.2d at 1488.

    In this case, the ALJ expressly found that Plaintiff has significant nonexertional

impairments. (TR 22). This finding precludes conclusive reliance on the grids. The ALJ's

error in relying conclusively on the grids is compounded by the ALJ's error in determining

Plaintiff's RFC for work.

    The ALJ found that Plaintiff has a severe impairment due to low average or borderline

intellectual functioning. (TR 23).  Because of this finding, the ALJ was required to

7

> follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly. This procedure first requires the [Commissioner] to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § [416.920a(b)(2)].   The [Commissioner] must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. §[416.920a(b)(3)].

Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir. 1995)(internal citation omitted).  The ALJ is required to "incorporate the pertinent findings and conclusions" in his or her decision, 20 C.F.R. § 416.920a(e)(2), and relate the medical evidence to those conclusions. Cruse, 49 F.3d at 618.   In this case, the ALJ summarized the results of two consultative psychological evaluations of Plaintiff. (TR 19-22).  Based on these reports and applying the procedure for evaluating mental impairments set forth in 20 C.F.R. § 416.920a, the ALJ concluded that Plaintiff's severe mental impairment had resulted in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace, and no episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

"Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). "The

term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Id. The ALJ did not mention the significantly probative evidence of Plaintiff's work history showing Plaintiff's repeated, unsuccessful attempts to work and her inability to maintain employment for longer than a few weeks at a time.  It is not clear whether the ALJ considered Plaintiff's work history and determined that it did not show repeated episodes of decompensation or simply overlooked it.  The ALJ's failure to explain his finding of no episodes of decompensation or deterioration in work or work-like settings, in light of Plaintiff's work history, warrants remand.

Moreover, the ALJ's findings of moderate difficulties in maintaining social functioning and moderate deficiencies of concentration, persistence, or pace were not included in the RFC assessment, despite the ALJ's consistent finding that Plaintiff has significant nonexertional limitations.   Dr. Green noted in the report of his consultative psychological evaluation of Plaintiff that her persistence and frustration tolerance were limited and that she manifested limited productive trial and error behavior which interfered with her ability to complete tasks in a timely manner. (TR 236).  Plaintiff's test results were interpreted by Dr. Green as also showing "chronic maladjustment characterized by immaturity and conflictual relationships with others." (TR 238).  Plaintiff's testimony was consistent with this medical assessment of her work-related functional abilities.  Plaintiff testified at her second and third disability hearings that she was homeless and stayed with friends or in her vehicle, that she did not have custody of her three minor children, and that

9

she "always thought people were talking about [her] so [she would] always leave school or leave work because [she] always thought people were making fun of [her]." (TR 294, 295, 302, 304, 314, ).   She informed one consultative examiner that her two youngest children were removed from her home by state protective services due to "neglect" and that she had previously lived off of her youngest child's disability benefits. (TR 236).  Plaintiff testified that even when she was attempting to regain custody of her daughter she was involved in "many confrontations" during the anger management classes she was required to complete. (TR 302).

Dr. Green noted there was a possibility of either symptom exaggeration or elevation of results due to reading problems (TR 238), but Dr. Green did not find that Plaintiff had exaggerated her symptoms and  Dr. Green also stated that he was not given any of Plaintiff's background records.  Dr. Green suggested that the "acquisition of complete background records" would corroborate his diagnostic impressions. (TR 235, 238).  The ALJ did not address this request for more information by the consultative examiner that might have resolved the psychologist's ambiguous diagnostic impressions.  Plaintiff testified she was able to read and understand newspapers, that her "best subject" in school was reading, and that she read at a "college reading" level, indicating the absence of a reading impairment. (TR 263, 295, 303).   At the third administrative hearing, the medical expert, Dr. Brady, also suggested that the consultative psychological evaluation of Plaintiff conducted by Dr. Green was inadequate because more diagnostic testing and background records were needed to determine an accurate diagnosis. (TR 323).  The ALJ did not explain in his decision why he

chose to ignore these recommendations by medical professionals.  Moreover, the ALJ failed to include in the RFC assessment any restrictions accommodating the "moderate" functional limitations found by the ALJ.  The RFC assessment is not supported by substantial evidence in the record, and therefore a remand for further administrative proceedings is warranted.

The ALJ found that Plaintiff has significant nonexertional impairments but the ALJ did not specify whether he was referring to Plaintiff's mental impairments or to nonexertional symptoms related to her pain and obesity.  On remand, this uncertainty should also be resolved.   Additionally, the ALJ did not explain in his decision why he rejected Dr. Green's uncontroverted diagnostic assessment of a psychotic disorder.  "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's application for benefits and REMANDING the case for further administrative proceedings consistent with this Report and Recommendation.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  June 29th , 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v.

Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____8[th]_____ day of _____June_____, 2009.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE